## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 9:16-cv-80438

| | |
|---|---|
| **ROBERT SHELL** § | |
| *Plaintiff,* § | |
| § | |
| vs. § | |
| § | |
| § | |
| **VOLKSWAGEN OF AMERICA, INC.** and § | |
| **VOLKSWAGEN GROUP OF AMERICA, INC.** § | |
| *Defendants.* § | **JURY TRIAL DEMANDED** |

-----------------------------------------------------------------

Plaintiff Robert Shell alleges the following against Volkswagen of America, Inc. and Volkswagen Group of America, Inc. (collectively herein "Defendant" or "Volkswagen") based where applicable on personal knowledge, information and belief, and the investigation of counsel:

### Nature of the Case

1.  Volkswagen manufactures and sells automobiles throughout the United States of America under various model names, such as the Jetta, Passat, Beetle, Golf and Audi A3. These models were sold in different formats, however as many as 482,000 were turbocharged diesel engines, or TDI models. Volkswagen marketed these TDI model vehicles as being "clean diesel" vehicles throughout the United States of America, including in this federal district.

2.  Plaintiff bought one of these vehicles based on representations that it was a "clean diesel."

3.  In September 2015, Volkswagen admitted that it had cheated on emissions tests by writing software that turned off the emissions regulation devices except during emissions testing. On September 22, 2015, the head of Volkswagen's U.S. operations, Michael Horn, stated at a press conference: "worst of all, we were dishonest to our customers. We totally screwed up."

4.  In essence, a "defeat device" was used to create the impression of high fuel efficiency and high performance with extremely low emissions. A "defeat device" is a software trick deliberately

1

designed by Volkswagen's engineers to make the engine run more cleanly when emissions testing was being conducted, but otherwise to run more powerfully and less fuel efficiently (at the expense of being clean).

5. During normal operation the vehicles emitted between 10 and 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations. The U.S. Environmental Protection Agency (the "EPA") has determined that these "clean diesels" are responsible for emitting dangerous pollutants at levels far in excess of the legal limit.

6. Volkswagen's violations of the Clean Air Act and various state regulations are detailed in a Notice of Violation the EPA issued to Defendant, as well as a letter from the California Air Resources Board ("CARB").

7. Volkswagen marketed vehicles with these defeat devices as "green" and environmentally friendly, when in fact these representations were hollow. Defendant's vehicles possessed none of the promised attributes.

8. Volkswagen knew its advertising claims were false and yet promoted the "clean diesel" in a fraudulent action to swindle consumers, like Plaintiff, into purchasing its vehicles.

**Parties**

9. Plaintiff Robert Shell is a citizen of the State of Florida, residing in Palm Beach Gardens, Florida. He is the original owner of a 2012 Volkswagen Jetta (with TDI 2.0 diesel engine) which he purchased from Volkswagen of the Palm Beaches in West Palm Beach, Florida.

10. Defendant, Volkswagen of America, Inc. is a New Jersey corporation with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Based upon information and belief Volkswagen of America, Inc. is an organizational unit of Volkswagen Group of America, Inc.

11. Defendant, Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

12. At all relevant times, Volkswagen manufactured, distributed, sold, leased and warranted the vehicles with defeat devices under the Volkswagen and Audi names throughout the United States, including the State of Florida. The defeat device, engine, and engine control systems were all designed by Volkswagen or its agents. Volkswagen also developed and distributed its owners' manuals, warranty materials, advertisements and other promotional materials related to the vehicles containing defeat devices.

## Jurisdiction and Venue

13. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) because: (i) Plaintiff is a citizen of a different state than Defendant; and, (ii) the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

14. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district, including that Plaintiff was misled by Volkswagen in this district and Plaintiff purchased his vehicle in this district.

## Tolling of the Statute of Limitations

15. Plaintiff asserts that any applicable statute(s) of limitation has been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein. Plaintiff could not have reasonably discovered the true and defective nature of the vehicle he purchased until shortly before this litigation commenced. Accordingly, Volkswagen should be estopped, both at law and equity, from relying on any statute(s) of limitation.

## Factual Allegations

16. Plaintiff purchased his 2012 Volkswagen Jetta based upon the material representations of Volkswagen that he was obtaining a "clean diesel."

**17.**  Defendant advertised Plaintiff's car as being environmentally friendly.

**18.**  Plaintiff relied on Defendant's statement that the Jetta was a clean, low-emission vehicle, in deciding to purchase it.  Plaintiff purchased his car because he was concerned about the environment and fuel efficiency.

**19.**  Plaintiff is concerned that if he attempts to repair the vehicle it will cost him more for fuel and he will experience degraded performance, costing him more and causing the vehicle to further lose value.  He is also concerned that regardless of whether or not he has the vehicle repaired, it will lose value or has already lost value.  He is also concerned that regardless of whether or not he has the vehicle repaired, the vehicle will not satisfy emissions and/or inspection requirements in the State of Florida and other states.

**20.**  Volkswagen secretly and fraudulently installed software in TDI vehicles which tricked emissions testing systems.

**21.**  Plaintiff has suffered immediate an irreparable damage to the value of his TDI vehicle, both from stigma as well as from the revelation that his TDI vehicle is not physically the same vehicle he believed he was purchasing.

**22.**  Plaintiff may face recalls which diminish fuel mileage and/or vehicle performance.

**23.**  Plaintiff relied upon the fraudulent representations of Volkswagen to his detriment.

**24.**  Plaintiff would not have purchased his TDI vehicle had he known the truth about the fraudulent emissions system.

**25.**  Defendant designed and sold cars that were designed to, and did, mislead consumers and regulators about the vehicles' emissions, fuel efficiency and performance.  Despite touting the "green" benefits of its diesel vehicles, Defendant sold cars that produced pollution up to 40 times higher than advertised, and then intentionally concealed the truth about those cars through a sophisticated scheme involving defeat devices.

26. For years, Volkswagen advertised its diesel vehicles as fuel efficient cars with low emissions. Consumers have responded to these advertisements, making Volkswagen the largest seller of diesel passenger vehicles in the United States.

27. Though under 1% of automobiles sold in the United States are powered by diesel engines, approximately 23% of those sold by Volkswagen are diesels, with those vehicles making up the bulk of diesel automobile sales in the United States.

28. Part of Volkswagen's success owes to the promotion of their diesel cars as "clean" and "green" vehicles. In fact, "Clean Diesel" is a marketing term used by Volkswagen to market the vehicles at issue in this action.

29. Volkswagen's website boasts that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

30. Volkswagen also supported and directed a website to promote its "green" diesel technology, www.clearlybetterdiesel.org, which states that Volkswagen's technology reduces smog and "meets the highest standards in all 50 states, thanks to "…innovative engine technology that burns cleaner." This statement was knowingly false.

31. In addition to touting the low emissions of the subject vehicles, Volkswagen touted the fuel efficiency of the vehicles, in that they could achieve over 40 miles per gallon of fuel and travel over 800 miles on a tank of fuel.

32. Volkswagen also promoted the performance of its diesel powered automobiles, to overcome the consumer perception that diesel automobiles were slow and sluggish.

33. On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen. The NOV details how Defendant installed sophisticated software in the Volkswagen and Audi diesel vehicles that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the tests. At all other times that the vehicle is in

5

operation, the emissions controls are deactivated, permitting pollution to be freely released into the environment at levels that far exceed those allowed by federal and state clean air regulations. This software, produced and used by Volkswagen, is a "defeat device" as defined in the Clean Air Act.

34. Volkswagen programmed the engine control computers in the vehicles with defeat devices to detect when cars are undergoing emissions testing. When testing is occurring, the defeat device alters the vehicle's engine and exhaust systems such that emissions standards are met. When testing is not being performed, the engine control systems operate the vehicle in a way that does not comply with EPA emissions requirements.

35. Under normal operating conditions, the engines produce more power and higher fuel efficiency than they would if they complied with EPA emissions requirements.

36. Because of this software, Defendant's diesel vehicles can seemingly meet emissions standards while emitting nitrogen oxides (NOx) at up to 40 times the standard allowed under federal and state laws and regulations during the normal operation of the vehicles.

37. The Clean Air Act sets emissions standards for vehicles and requires vehicle manufacturers to certify to the EPA that vehicles sold in the United States meet applicable federal emissions standards. All vehicles sold in the United States must be covered by a certificate of conformity issued by the EPA.

38. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

39. Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition by manufacturing and selling vehicles with defeat devices that allowed for higher levels of emissions than were certified by the EPA.

40. Volkswagen was not simply satisfied with its deception.  As if to add insult to injury, Volkswagen charged consumers substantial premiums for vehicles equipped with defeat devices—oftentimes up to $4,000.00 more for a "defeat device" equipped vehicle.

41. Despite an EPA order to Defendant to recall vehicles equipped with defeat devices, purchasers of the subject vehicles, like Plaintiff, have and will continue to suffer significant harm.

42. The only way for Volkswagen to make the vehicles comply with emissions standards will be to significantly reduce the vehicles' horsepower, torque and fuel efficiency.  Thus, if made EPA compliant, Plaintiff will suffer actual harm and damages because his vehicle will no longer perform as advertised and warranted.

43. Also, Plaintiff's vehicle will suffer from a significant diminution in value by being made EPA compliant, because not only did Plaintiff overpay for his vehicle, but he will be forced to pay much more to fuel his less fuel efficient vehicle.

44. Plaintiff has suffered, and continues to suffer, losses of money and/or property because of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failures to disclose the true emissions of the vehicles.

45. As part of his decision to purchase his vehicle, Plaintiff researched the fuel efficiency, manufacturing quality, reputation, and dependability of the 2012 TDI Jetta.  Based on representations made by Volkswagen, Plaintiff reasonably understood that the vehicle possessed the performance, quality, emissions, and fuel efficiency advertised.

46. Plaintiff would not have purchased the vehicle if he had known at the time of purchase that the defeat device existed, that emissions were much higher than advertised, and the engine was not "clean."  Alternatively, Plaintiff would not have paid the purchase price he ultimately did.

**47.** Even if Volkswagen recalls the defeat device vehicles and degrades the engine performance of Plaintiff's vehicle to make it compliant with EPA standards, Plaintiff will be forced to spend more on fuel and will not receive the advertised performance of his vehicle.

**48.** Plaintiff's recalled vehicle will be worth less in the used marketplace because of its decrease in performance and efficiency, which means that Plaintiff will not be able to recoup the expected value of his vehicle in the future.

**Volkswagen's Express Warranties**

**49.** In connection with the sale (by purchase or lease) of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty on each vehicle for a period of three years or 36,000 miles, whichever occurs first. This warranty "covers any repair to correct a manufacturing defect in materials or workmanship."

**50.** In addition, Defendant expressly warranted its vehicle through a Federal Emissions Control System Defect Warranty in which Defendant warranted for a period of two years or 24,000 miles, whichever occurs first, to "every purchaser or lessee" that every Volkswagen vehicle: (i) was designed, built and equipped so as to conform at the time of sale with all applicable regulations of the EPA; and, (ii) is free from defects in material and workmanship which causes the vehicle to fail to conform with EPA regulations.

**51.** In addition, Defendant also expressly warranted for a period of eight years or 80,000 miles, whichever occurs first, that a Volkswagen dealer will repair or replace, free of charge, the following major emission control components: (i) catalytic converter and particulate filter; (ii) engine electronic control module; and, (iii) on-board diagnostic device.

**52.** In addition, Defendant also provided a Federal Emissions Performance Warranty that provides that if the following conditions are met, any authorized Volkswagen dealer in the Unites States will remedy any nonconformity, free of charge under these circumstances: (i) the vehicle fails

8

to conform to the applicable emission inspection standards as determined by an EPA Approved State Inspection and Maintenance test or inspection; or, (ii) the vehicle fails an inspection test resulting from a malfunction of the catalytic converter, particulate filter, engine electronic control module or an on-board diagnostic device; and, (iii) the failure of the inspection requires the vehicle owner to bear any penalty or other sanction, including the denial of the right to use the vehicle under local, state or federal law.

53. Plaintiff was provided with such a warranty and it was a basis of his purchase of his vehicle.

54. Plaintiff has experienced defects within the warranty period. Despite the existence of the express warranties, Defendant failed to inform Plaintiff that his vehicle had been intentionally and/or knowingly designed and manufactured to be out of compliance with federal and state clean air standards and by failing to fix the defective emissions components free of charge.

<b><u>Causes of Action</u></b>

**COUNT 1:** **<u>Florida Deceptive and Unfair Trade Practices Act</u>** (**Fla. Stat. §501.201** *et seq.*)

55. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

56. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

57. Plaintiff is a "consumer" as defined by FDUTPA, Fla. Stat. § 501.203(7), and the subject transaction was "trade or commerce" as defined by Fla. Stat. §501.203(8).

58. In committing the acts alleged above, Defendant engaged in unconscionable, deceptive and unfair acts and practices by omitting, failing to disclose or adequately disclose, and/or concealing the material fact that it deceptively represented Plaintiff's vehicle as possessing

certain performance and fuel economy characteristics and as being in compliance with all applicable federal and state emissions standards.

59. Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant advertised, marketed, leased and sold Plaintiff's vehicle using inaccurate and overstated performance and fuel economy characteristics and as being in compliance with all applicable federal and state emissions standards, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that were substantially injurious to Plaintiff.

60. Plaintiff purchased or leased his vehicle after viewing Defendant's deceptive and misleading statements and representations relating to the vehicle's performance and fuel economy characteristics and as being in compliance will all applicable federal and state emissions standards, in online and print and broadcast advertisements, and in other marketing materials, and Plaintiff has not received the promised emissions compliance.

61. Plaintiff paid a premium price for his vehicle because he was deceived that the vehicle provided the purported performance, fuel economy, and emissions compliance that Defendant claimed. Plaintiff has suffered ascertainable loss because he would not have purchased or leased the vehicle, or would have paid far less for the vehicle, had Defendant accurately described the vehicle's performance, fuel economy, and emissions compliance.

62. The resale value of Plaintiff's vehicle has been negatively affected, causing Plaintiff injury.

63. Defendant's unconscionable, deceptive and unfair acts and practices were consumer oriented. Defendant engaged in the above stated conduct knowing that the vehicle sold to Plaintiff would be affected by the unconscionable, deceptive, or unfair practices alleged herein. Defendant represented and failed to disclose material facts regarding Plaintiff's vehicle when it knew or

should have known that the representations it made were false, deceptive, and reasonably likely to deceive the Plaintiff to his detriment.

64. As a direct and/or proximate and/or producing cause of the unconscionable, unfair and deceptive acts or practices alleged herein, Plaintiff has been damaged and is entitled to recover actual damages as permitted by law, including Fla. Stat. §501.211, in an amount to be proven at trial. Plaintiff also seeks attorney's fees and costs and well as statutory damages prescribed by Fla. Stat. §§501.211(2) and 501.2075.

**COUNT 2:    Fraud by Concealment**

65. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

66. The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiff, as described above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended by Defendant to mislead Plaintiff.

67. Defendant had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their vehicles as possessing certain performance and fuel economy characteristics and as being in compliance with all applicable federal and state emissions standards. Defendant marketed its vehicles as being "clean diesel." Once Defendant made representations to the public, including Plaintiff, about the safety, quality, functionality and reliability, as well as about the performance and fuel economy characteristics of the "clean diesel" vehicles in particular, Defendant was under a duty to disclose those omitted facts, because where one does speak, he must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is outright fraud.

11

68. In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant which had superior knowledge and access to the truth and facts, and Defendant knew they were not known to or reasonably discoverable by the Plaintiff. These concealed and omitted facts were material because they directly impact the safety, quality, functionality, reliability, and value of the vehicle sold to Plaintiff.

69. Defendant actively concealed and/or suppressed these material facts in whole or in part with the intent to induce Plaintiff to purchase or lease the vehicle at a higher price which did not match the vehicle's true value. Plaintiff was unaware of these material facts. Had Plaintiff known these material facts, he would not have acted as he did.

70. As a result of Defendant's conduct, Plaintiff has been damaged because the value of Plaintiff's vehicle has diminished as a result of Defendant's fraudulent concealment of its scheme to circumvent federal and state emissions standards, which has harmed the Volkswagen/Audi brand names associated with Plaintiff's vehicle.

71. Further, based on information and belief, Plaintiff anticipates that if and when he is compelled to bring his vehicle into compliance with federal and state emissions standards his vehicle will no longer possess the performance and/or fuel economy characteristics which were represented to exist at the time of the sale or lease.

72. Based on information and belief, Plaintiff alleges that Defendant engaged in a course of conduct to ensure that employees, dealers, and agents did not reveal this scheme to regulators or consumers in order to further its fraudulent scheme and to enhance Defendant's reputation in order to sell more vehicles—and to do so at a higher price.

73. Defendant's conduct warrants imposition of punitive damages in an amount sufficient to deter such conduct in the future, to be determined according to evidence given at trial, and Plaintiff so prays.

**COUNT 3:** **Negligent Misrepresentation**

74. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

75. Defendant had a duty to provide honest and accurate information to Plaintiff so that Plaintiff could make an informed decision regarding purchase or lease of the vehicle.

76. Defendant specifically and expressly misrepresented material facts to Plaintiff, as described above, including but not limited to representation that Plaintiff's vehicle complied with federal and state emissions standards and possessed certain performance and fuel economy characteristics.

77. Defendant knew or in the exercise or reasonable diligence should have known that Plaintiff would be misled by these misrepresentations.

78. Plaintiff justifiably relied on Defendant's misrepresentations and has been damaged thereby.

**COUNT 4:** **Magnuson-Moss Warranty Act** (15 U.S.C. §2301, *et seq.*)

79. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

80. Plaintiff's vehicle is a "consumer product" within the meaning of 15 U.S.C. §2301(1).

81. Plaintiff is a "consumer" within the meaning of 15 U.S.C. §2301(3), because he is a person entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

82. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §2301(4)-(5).

83. 15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

84. Defendant provided Plaintiff with an implied warranty of merchantability in connection with the purchase or lease of his vehicle that is an "implied warranty" within the meaning of 15

U.S.C. §2301(7). As a part of the implied warranty of merchantability, Defendant warranted that Plaintiff's vehicle would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

85. Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiff pursuant to 15 U.S.C. §2310(d)(1).

86. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Plaintiff's vehicle is unconscionable, and any such effort to disclaim, or otherwise limit, liability for such vehicle is null and void.

87. Plaintiff has had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

88. Nonetheless, privity is not required here because Plaintiff is an intended third-party beneficiary of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the subject vehicle and have no rights under the warranty agreements provided with the subject vehicle; the warranty agreements were designed for and intended to benefit consumers.

89. Affording Defendant a reasonable opportunity to cure its breach would be unnecessary and futile here. Defendant has engaged in a more than seven year endeavor to knowingly conceal the fact that it designed and manufactured into the Plaintiff's vehicle a defeat device for the sole purpose of circumventing federal and state emissions standards—evidencing an intent not to honor its warranties. At the time of sale or lease of Plaintiff's vehicle Defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning Plaintiff's vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that

Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure their breaches of warranties is excused and thereby deemed satisfied. Plaintiff suggests that such procedure was intended to remedy non-intentional breaches, not the intentional and/or knowing breaches committed by Defendant.

90. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.00. The amount in controversy of this action exceeds the sum of $50,000.00 (indeed, it even exceeds $75,000.00), exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

91. Further, Plaintiff is also entitled to equitable relief under 15 U.S.C. §2301(d)(1).

**COUNT 5:   Assumpsit**

92. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

93. Plaintiff has conferred a substantial benefit upon Defendant by purchasing or leasing his vehicle.

94. Defendant has wrongfully collected and retained money paid by Plaintiff for the vehicle, based upon Defendant's deceptive and unfair conduct relating to the performance and emissions compliance of Plaintiff's vehicle, as alleged herein.

95. Plaintiff's payment was accepted and retained by Defendant under circumstances such that it would be inequitable for Defendant to retain the benefit without payment to Plaintiff. Defendant has enjoyed, and continues to enjoy, the benefit of the funds wrongfully retained from Plaintiff.

96. As a result of Defendant's actions, Plaintiff has sustained damages in an amount to be determined at trial. Plaintiff seeks full disgorgement and restitution of Defendant's enrichment,

benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

97. Further, Plaintiff seeks restitution and disgorgement of profits realized by Defendant as a result of its unfair, unlawful and/or deceptive practices in its dealings with Plaintiff.

98. Plaintiff has suffered irreparable harm for which there is no adequate remedy at law.

**COUNT 6:   Unjust Enrichment**

99. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 54, above, as though set forth verbatim herein at this point.

100. Defendant has knowledge of the emissions compliance failures which it failed to disclose to Plaintiff.

101. As a result of Defendant's wrongful and fraudulent acts and omissions as described herein, Defendant obtained monies which rightfully belong to Plaintiff.

102. Defendant appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff who, without knowledge of the defect, paid a higher price for his vehicle (which actually had lower values) and Defendant received monies for a vehicle which Plaintiff would not have purchased if the defect had been disclosed.

103. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits. Further, Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, fairness, equity, and good conscience.

104. Plaintiff would not have paid money for his vehicle, or would have paid substantially less, had he been aware that the vehicle did not comply with federal and state clean air standards. Under these circumstances, it would be inequitable for Defendant to retain the benefit conferred without compensating Plaintiff.

**105.** Plaintiff requests that this Court enter judgment in his favor for restitution of the profits and revenues unjustly obtained, plus interest.

## PRAYER

WHEREFORE, Plaintiff prays that Volkswagen be cited to appear and answer, and that on final trial, the Honorable Court render judgment in favor of the Plaintiff, to wit:

1. Damages: actual, general, economic, special, incidental, statutory, compensatory, consequential, and otherwise, in an amount to be determined at trial;
2. Exemplary and punitive damages in an amount to be determined at trial;
3. Disgorgement and restoration of all monies wrongfully obtained, together with interest at the maximum legal rate;
4. All costs;
5. Both pre-judgment and post-judgment interest at the maximum legal rate;
6. Reasonable attorneys' fees pursuant to applicable law; and,
7. For such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled, as the Court deems just and proper.

Dated: March 21, 2016

Respectfully submitted,

/s/ Mizell Campbell Jr., Esq.
**LAW OFFICE OF MIZELL CAMPBELL JR., PLLC**
Mizell Campbell, Jr. (FBN 0633224)
3389 Sheridan St., #497
Hollywood, Florida 33021
Telephone: (954) 944-2815
Facsimile: (866) 778-5827
mizellesq@hotmail.com

**ATTORNEY FOR PLAINTIFF**